[Civ. No. 5623.   Fourth Dist.   Mar. 26, 1958.]

ISBRANDTSEN COMPANY, INC. (a Corporation), Respondent, v. PRODUCERS COTTON OIL COMPANY (a Corporation), Appellant.

*Assigned by Chairman of Judicial Council.

Docker & Docker and William F. Docker for Appellant.

Stammer, McKnight & Barnum for Respondent.

BARNARD, P. J.—This is an action for damages based on the failure to ship an agreed amount of cotton.

The plaintiff is engaged in a world-wide shipping business in which it owns and operates a number of ships in regular service with scheduled sailings. It also engages extensively in "tramp" operations whereby it charters a vessel from its owner for a definite voyage between given ports, and contracts with various shippers for the transportation of cargo between those points. This case involves such a tramp operation.

Early in 1951, shipping space for cotton from the Pacific Coast to India was difficult to obtain. The plaintiff proposed to a number of cotton shippers that if sufficient offers of cotton at a freight rate of $2.65 per 100 pounds could be obtained it would charter a vessel to load at Los Angeles and San Francisco between March 15 and April 15, for a direct voyage to Bombay, India. As a result, it obtained contracts from the defendant and three other shippers to ship a total of 17,175 bales of cotton, the defendant agreeing to ship 5,000 bales.

The plaintiff chartered a vessel at the rate of $2,136.53 per day of 24 hours and agreed to redeliver the vessel at a port in the Colombo-Karachi range. On March 24, while the vessel was en route to Los Angeles to begin loading, the various shippers tried to cancel a part or all of their respective commitments for space for cotton on this ship. The plaintiff refused to cancel these contracts. Each of these shippers shipped some cotton and a total of 10,946 bales of cotton were thus shipped. Of the 6,229 bales which were not shipped the defendant failed to ship 2,846 bales.

Prior to this attempted cancellation the plaintiff had booked some other cargo for Bombay, including some oil and asphalt in drums, and was looking for additional cargo to fill portions of the ship in which cotton could not be placed. After the attempted cancellation it was unable to locate any additional cotton, but it obtained two large additional shipments of asphalt and oil in drums, part of which was to be delivered at Colombo and part at Karachi, Pakistan. This necessitated an extra stop for loading at Port Hueneme, an extra stop at Colombo on the way to Bombay, and an extension of the voyage from Bombay to Karachi. The plaintiff returned the vessel to its owners at Karachi when the final unloading was completed.

The plaintiff then brought this action to recover the difference between the net amount it would have received from the defendant's share of the 6,229 bales which were not shipped and the net amount it received from the substitute cargo obtained, with allowances for the savings realized in connection with the cargo not shipped and the additional expense incurred in connection with the substitute cargo. The court found in favor of the plaintiff finding, among other things, that the plaintiff had used all reasonable effort to minimize the damage by securing substitute cargo, and that it was successful in securing other cargo which served to decrease in part the damage which would otherwise have resulted from the defendant's breach of its contract to ship 5,000 bales of cotton. As a conclusion of law, it was found that the plaintiff was entitled to a judgment in the sum of $24,378.10, (this being the defendant's proportion of the total damage shown) together with interest thereon from April 16, 1952 to entry of judgment. A judgment was accordingly entered for $32,089.87, from which the defendant has appealed.

The appellant's main contention is that the court followed the wrong measure of damage in arriving at this result.

It is argued that the respondent was not entitled to recover more than it would have gained by the full performance of the contract, and that the proper measure of damage here is the anticipated revenue of the ship (the contract price for carrying 17,175 bales of cotton) adjusted for savings arising from the breach, less the amount actually earned by the ship adjusted for any additional costs incurred in carrying substitute cargo. We are unable to agree with this contention. These shippers did not contract for the use of all of the space on the ship. They contracted only for the space that would be required for 17,175 bales of cotton, and they had no interest in or concern with the remaining space on the ship. The cotton could be carried only in a certain part of the ship, and the appellant had no reason to believe that the remainder of the ship would not be utilized. This was planned by the respondent, in fixing the rate on the cotton, and the evidence justifies the conclusion that this was understood by the appellant. The breach of the contract affected only the space which would have been occupied by the 6,229 bales which were not shipped. The proper measure of damage is the difference in the net return from that space, as it actually was and as it would have been had the contract been performed, as adjusted in accordance with any savings on the one hand and any extra expense on the other. This difference resulted from the lower rate at which the substitute cargo had to be carried, and the fact that it was necessary, in order to get the substitute cargo, to extend the voyage from Bombay to Karachi.

The appellant also contends that by erroneous assumptions and conjecture, which were admitted in evidence over objection and adopted by the trial court, the respondent overstated its anticipated revenue and understated the credit due the appellant from substituted cargo. It is argued that the respondent arbitrarily assumed that it was entitled to bales of 517 pounds each although it was entitled only to bales averaging about 500 pounds each, thus overstating its anticipated revenue on all 17,175 bales; that it improperly assumed that certain cargo was substitute cargo, although it was carried in portions of the ship where cotton would not have been carried, and although it was originally intended to send the ship to Bombay only and no other cargo for that port could be obtained; that the respondent improperly assumed that certain expenses after the ship left Bombay for Karachi were chargeable against the appellant; and that without these er-

roneous assumptions and matters of speculation the appellant's proportion of the actual damage would be about $10,000.

■ It was the duty of the respondent, after the breach, to minimize the damage to the extent possible by obtaining substitute cargo for the space that would have been occupied by the cotton contracted for but not shipped. The evidence is undisputed that the only cargo which could be secured for that purpose in a sufficient amount was the cargo which was taken, and it clearly appears that had that cargo not been accepted the resulting damage would have been much greater. The fact that a short extension of the voyage was made necessary by the acceptance of this cargo is not controlling. Proportionate credits and allowances were made, and the net result was favorable to the appellant rather than otherwise. No question is raised concerning the propriety of any item of expense as allowed by the court except for some of the charges at Karachi. It is admitted that the cotton shippers should be charged for the additional fuel and charter time in steaming from Bombay to Karachi, but argued that they should not be charged anything for the time used at Karachi in unloading, cleaning and usual delays since the same time would have been required had the voyage ended at Bombay as originally contemplated. The items of expense are also affected, of course, by the contentions that what was actually substitute cargo was improperly determined, and that the anticipated revenue from the 6,229 bales of cotton which were not shipped was improperly increased by assuming that those bales, if shipped, would have averaged 517 pounds each instead of 500 pounds each.

■ The evidence with respect to the time spent in unloading, cleaning and usual delays at Karachi is undisputed, and the appellant was only charged with its proportion of the total charge as prorated between the substitute cargo and the cargo which was not substitute cargo which was delivered there. This was all a part of what was done to minimize the damages to the appellant's advantage, and the evidence supports the findings in that connection. The matter of what was and what was not substitute cargo could not properly be determined by the exact location in the ship in which various parts of the substitute cargo was carried. The controlling element was the amount of cargo which could be carried in the space which would have been required for the 6,229 bales of cotton had they been shipped. The evidence in this regard was sufficiently definite to sustain the court's findings in that

connection, and it cannot be said that these findings rest upon mere assumptions, speculation or conjecture.

■ The court adopted the respondent's estimate of the net return to be expected from the 6,229 bales of cotton not shipped, based on an average weight of 517 pounds per bale. There was evidence that in the cotton industry it is commonly estimated that the average weight of a bale will be about 500 pounds; that it is known that they vary, some bales weighing a little less and some a little more; that some weigh as high as 540 pounds and some less than 500; and that most of them weigh a little more than 500 pounds. There was evidence that in the shipping industry estimates are made on the average cubic feet of space per bale, and not on the average weight. There was also evidence that the 10,881 bales of cotton which were actually shipped on this vessel averaged 517 pounds per bale. The contract here in question was for 5,000 bales, with no weight specified. A weight of 517 pounds could reasonably be considered as being ''about'' 500 pounds. No evidence was produced in any way suggesting or indicating that the appellant, or the other shippers, intended that the remainder of the bales contracted for should be of any lesser weight, or that they were entitled to rely on any smaller space being reserved for them. Under the evidence as a whole it could reasonably be inferred that the remaining bales, if they had been shipped, would have weighed approximately as much and taken up approximately the same space on the ship as those which were actually shipped. The appellant, whose wrongful act gave rise to the injury, may not be heard to complain that the exact amount thereof could not be determined with mathematical precision. (*Zinn* v. *Ex-Cell-O Corp.*, 24 Cal.2d 290 [149 P.2d 177]; *Phalanx Air Freight* v. *National etc., Freight Corp.*, 104 Cal.App.2d 771 [232 P.2d 510].)

While the amount of total damage here allowed would appear from the record to be quite liberal, we are unable to hold that any element used in determining that damage was improper, or that any item of charge or credit was not sustained by the evidence.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.